**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

STACIE W.,[1]                                )
                                             )
        *Plaintiff*,                         )
                                             )
        v.                                   )        Civil No. 3:23-cv-00687-RCY-SLS
                                             )
MICHELLE KING,[2]                            )
Acting Commissioner of Social Security,      )
                                             )
        *Defendant*.                         )
_____          )

**REPORT AND RECOMMENDATION**

In this action, Plaintiff Stacie W. seeks review of the Commissioner of the Social Security

Administration's ("SSA") decision to deny her Title II application for disability insurance benefits.

This matter comes before the Court for a Report and Recommendation under 28 U.S.C.

§ 636(b)(1)(B) on cross-motions for summary judgment.  (ECF Nos. 12, 16.)  The motions have

been fully briefed (ECF Nos. 12, 13, 16), rendering this matter ripe for review.

Plaintiff asks the Court to reverse the Commissioner's decision and remand for further

proceedings pursuant to 42 U.S.C. § 405(g).  (Brief of Plaintiff in support of Her Social Security

Appeal (ECF No. 13) ("Pl.'s Br.") at 18.)  In the alternative, Plaintiff requests that the Court

remand for payment of benefits.  (Pl.'s Br. at 17.)  As the basis for such relief, Plaintiff argues that

the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") determination is

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of
the United States has recommended that federal courts refer to claimants by their first names and
last initials in social security cases.

[2] Michelle King became the Acting Commissioner of Social Security in January 2025.  Pursuant
to Rule 25(d) of the Federal Rules of Civil Procedure, she has been substituted for the former
Commissioner as Defendant in this action.  No further action need be taken.  42 U.S.C. § 405(g).

not supported by substantial evidence because he (1) erred in evaluating Plaintiff's subjective complaints; (2) improperly evaluated the medical opinion of Anthony Zenger, M.D. ("Dr. Zenger"); and (3) failed to consider each of Plaintiff's non-exertional limitations. (Pl.'s Br. at 7-17.) In response, the Commissioner argues that the ALJ fully considered Plaintiff's subjective complaints and non-exertional limitations in determining the RFC and properly considered and analyzed Dr. Zenger's opinion in accordance with the regulations. (Defendant's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 16) ("Def.'s Mem.") at 13-28.) Therefore, the Commissioner asks the Court to affirm his final decision. (Def.'s Mem. at 28.)

For the reasons set forth below, the Court finds that the ALJ applied correct legal standards in considering Plaintiff's subjective complaints, assessing the medical opinion evidence, and addressing Plaintiff's non-exertional limitations and that substantial evidence supports the ALJ's RFC determination. Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 16) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I.   PROCEDURAL HISTORY

On September 24, 2020, Plaintiff filed a Title II application for disability insurance benefits, alleging disability beginning on January 27, 2019. (Administrative Record ("R.") at 70-71, 77.)[3] In her application, Plaintiff alleged that she suffered from lumbago, osteoarthritis, pain, and hand numbness with pain and stiffness. (R. at 71, 77.) Plaintiff's application for benefits was

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

denied, both initially and upon reconsideration.  (R. at 70, 85.)  Plaintiff requested a hearing before an ALJ, and one was held on March 22, 2023.  (R. at 38-69, 107-08.)[4]

On April 5, 2023, the ALJ issued a written decision, finding Plaintiff not disabled under the Social Security Act ("the Act").  (R. at 17-26.)  On August 31, 2023, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (R. at 1-6.)  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ."  *Id.*  § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).  At step one, the ALJ reviews the claimant's current work activity to determine if he or she has been participating in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements.  *Id.*  § 404.1520(a)(4)(ii).  At step three,

---

[4] At the hearing, Plaintiff amended her alleged onset date to February 8, 2019.  (R. 41; Pl.'s Br. at 1; Def.'s Mem. at 2.)

the ALJ determines whether the medical impairments meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ determines the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments. *Id.* § 404.1545(a).

At step four, the ALJ must assess whether the claimant can perform his or her past employment given his or her RFC. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. § 404.1520(e). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *Id.* § 404.1520(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Id.* at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts." *Dunn v.*

*Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (citing *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).  Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion.  *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]."  *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589.  The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings.  *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).  If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision.  *See Breeden*, 493 F.2d at 1007.

### III.    THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim under the five-step evaluation process.  (R. at 17-26); *see* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 27, 2019 (the alleged onset date).  (R. at 19.)  At step two, the ALJ found that Plaintiff suffered from the severe impairments of obesity, degenerative disc disease, hypertension, carpal tunnel syndrome, and osteoarthritis of the bilateral knees.  (R. at 19.)  At step three, the ALJ concluded that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 19-21.)

The ALJ then determined Plaintiff's RFC after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (R. at 21.) Based on the evidence in the record, the ALJ found that Plaintiff retained the ability to perform light work as defined by 20 C.F.R. § 404.1567(b) with the following limitations:

> [Plaintiff] can stand and/or walk for four hours in an eight-hour workday and sit for six or more hours in an eight-hour workday. She must be permitted to alternate position between sitting and standing at intervals of 30 minutes while remaining on task. [Plaintiff] can frequently climb ramps or stairs, balance, and kneel. She can occasionally stoop, crouch, crawl, and climb ladders, ropes, or scaffolds. [Plaintiff] can frequently but not constantly handle and finger. She can occasionally tolerate exposure to concentrated vibration or concentrated hazards such as unprotected heights or moving machinery.

(R. at 21.)

In arriving at the RFC, the ALJ first acknowledged Plaintiff's subjective complaints. (R. at 22.) Plaintiff reported she fell down the steps and the resulting pain caused her to stop working as an archive technician in 2018. (R. at 22.) Plaintiff stated she has arthritis, carpal tunnel syndrome, and pain in her hands, hips, and knees. (R. at 22.) The pain affects her ability to focus throughout the day and impacts her ability to sleep. (R. at 22.) Plaintiff reported treating her symptoms with physical therapy, epidural shots, over-the-counter pain relievers, and muscle relaxers. (R. at 22.) She experiences digestion issues as a side-effect of the medications. (R. at 22.) She further testified that she has aching and muscle spasms when standing for a long period of time but can generally walk, stand, and sit for 15 to 20 minutes. (R. at 22.) Plaintiff stated her ability to squat, bend, reach, kneel, climb stairs, and complete tasks is limited and she cannot lift more than five to ten pounds. (R. at 22.)

Next, the ALJ considered Plaintiff's activities of daily living. (R. at 22.) Plaintiff reported that she could live independently, care for some personal hygiene needs, prepare simple or frozen

meals, complete light household cleaning, wash laundry, drive, shop for groceries and personal needs, handle her finances, maintain medical appointments, and attend church. (R. at 22.) The ALJ acknowledged that Plaintiff "limit[ed] her household chores to what she feels that she is able to accomplish." (R. at 22.)

The ALJ then detailed Plaintiff's medical records and treatment beginning in 2017. (R. at 22-23.) In early 2017, a year after Plaintiff's fall, a treatment provider found Plaintiff had mild degenerative disc disease slightly more prominent at L3-S1 but noted no other significant findings. (R. at 22.) That same year, Plaintiff rated her pain as 8/10. (R. at 22.) While medical records noted back pain, positive straight leg raise, and antalgic gait, those same records stated Plaintiff's strength, sensation, and deep tendon reflexes in all extremities were within normal limits. (R. at 22.) Based on those findings, a treatment provider recommended nerve block injections along with a back brace, physical therapy, and outpatient rehabilitation. (R. at 22.) In 2019, Magnetic Resonance Imaging ("MRI") of the lumbar spine showed mild to minimal facet arthropathy at L1-L5 and mild to moderate arthropathy and hypertrophy bilaterally at L5-S1. (R. at 22-23.) In 2020, Plaintiff attended pain management, rating her pain between 4/10 and 7/10 and reporting no musculoskeletal or neurological symptoms. (R. at 22.)

On June 26, 2021, Plaintiff reported her history of osteoarthritis, lumbago, and hypertension to Dr. Zenger, the consultative examiner. (R. at 23.) Plaintiff presented with moderate difficulty walking on her heels and toes and an abnormal tandem walk. (R. at 23.) Plaintiff could not hop on one foot bilaterally. (R. at 23.) Dr. Zenger recorded no signs of joint swelling, effusion, erythema, or deformity. (R. at 23.) The examination showed that Plaintiff had a "steady and symmetric gait, no assistive device, orientation x4, no muscle spasms, normal

sensation to light touch throughout, and 5/5 strength bilaterally in the upper and lower extremities." (R. at 23.)

The ALJ acknowledged other conditions and symptoms alleged by Plaintiff. (R. at 23.) The ALJ found that Plaintiff's hypertension was managed through medication. (R. at 23.) In November 2021, Plaintiff presented with numbness and tingling in her hands. (R. at 23.) After an Electromyography ("EMG") confirmed mild bilateral irregularities with no denervation, Plaintiff was diagnosed with bilateral carpal tunnel syndrome. (R. at 23.) In 2022, Plaintiff was seen by OrthoVirginia on several occasions for knee, shoulder, and back pain. (R. at 23.) The clinical and examination notes showed moderate tricompartmental degenerative changes in her knees with no acute process, minor changes in her glenohumeral joint, and mild degenerative changes in her spine. (R. at 23.) In October 2022, Plaintiff presented with chest pain. (R. at 23.) The ALJ noted that "cardiopulmonary studies found no acute processes" and "[h]er symptoms remained monitored and managed on an outpatient and primary care basis." (R. at 23.) A subsequent exercise stress test was normal with no signs of ischemia. (R. at 23.)

The ALJ then considered the medical opinions in accordance with the requirements of 20 C.F.R. § 404.1520c. (R. at 23-24.) Based on his consultative evaluation, Dr. Zenger opined that Plaintiff had a modified RFC and could frequently lift and carry up to ten pounds, sit about six hours, and stand and walk for four hours in an eight-hour workday. (R. at 23.) He further opined that Plaintiff could only sit, stand, or walk for 30 minutes at a time. (R. at 23.) Dr. Zenger indicated he found no limitations regarding Plaintiff's ability to bend, stoop, crouch, or squat. (R. at 23.) The ALJ found Dr. Zenger's opinion to be "somewhat supported," explaining "the 4/6 standing, sitting, and walking delineation is well supported by the clinical findings of the consultative examination and consistent with the remaining conservative treatment history." (R. at 23.) The

8

ALJ also found the record consistent with the "the environmental and postural limitations" opined by Dr. Zenger.  (R. at 23.)

In addition to Dr. Zenger's opinion, the ALJ considered Plaintiff's Disability Determination Explanations, both at the initial and reconsideration levels.  (R. at 24.)  At the initial stage, state agency examiner, Dr. William Rutherford, limited Plaintiff to "light work, four hours of standing and/or walking, occasional to frequent posturals, and the need to alternate between standing and sitting every 30 minutes."  (R. at 24.)  At the reconsideration stage, state agency examiner, Dr. Robert McGuffin, adopted similar restrictions and added mild carpal tunnel syndrome limitations and environmental limitations to concentrated exposure to vibration and hazards.  (R. at 24.)  The ALJ found Drs. Rutherford and McGuffin's opinions to be partially persuasive, explaining the opinions are "consistent with the entirely conservative treatment history, the lack of acute complications present on physical examination, and [Plaintiff]'s stated ongoing capabilities."  (R. at 24.)

The ALJ determined that Plaintiff's impairments could cause her alleged symptoms but found Plaintiff's "statements concerning the intensity, persistence and limiting effects of th[o]se symptoms . . . not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (R. at 22.)  The ALJ concluded that Plaintiff's "treating and examining sources do not support the severity of restrictions that [she] has alleged."  (R. at 23.)  The ALJ explained:

> [T]he longitudinal history of clinical studies notes only mild to moderate irregularities with her knees, lumbar spine, left shoulder, and with her carpal tunnel syndrome.  There was no clinical evidence of acute irregularities or complications. In addition to the consultative evaluation, follow-up physical assessments noted steady or symmetric gait, no assistive device, orientation x4, no muscle spasms, normal sensation to light touch throughout, and 5/5 strength bilaterally in the upper and lower extremities.  There were no signs of joint swelling, effusion, erythema, or deformity, and ranges of motion were universally normal bilaterally.  Treatment

for her combined symptoms has remained entirely conservative, routine, and outpatient. There is no evidence of complications requiring hospitalization or further evaluation with a specialist. Furthermore, even when accounting for her symptoms in accordance with Social Security Ruling 16-3p, the record reflects that [Plaintiff] can care for some personal hygiene needs, prepare simple or frozen meals, complete light household cleaning, wash laundry, drive, shop for groceries and personal needs, handle her finances, maintain medical appointments, go to church, and communication with talking, text, and video chat. Therefore, to account for the persistent pain, the undersigned has limited [Plaintiff] to light work with no more than four hours of standing and/or walking in an eight-hour day. [Plaintiff] is limited to frequent postural activities, with occasional to frequent postural and environmental exposure. [Plaintiff's] allegations of greater restrictions are not entirely consistent with the adopted [RFC], because they are not supported by the conservative and grossly outpatient treatment history during the period at issue, the clinical and examination findings of no acute complications, and [Plaintiff's] stated ongoing capabilities.

(R. at 23-24 (internal record citations omitted).)

After completing the RFC assessment, the ALJ found at step four that Plaintiff could not perform her past relevant work as an archive technician. (R. at 24.) The ALJ then determined Plaintiff's vocational factors, including that she had at least a high school education and met the definition of a younger individual at the alleged onset date and subsequently changed age category to closely approaching advanced age. (R. at 25.) At step five, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy considering her vocational factors and RFC. (R. at 25-26.) The ALJ adopted the vocational expert's testimony that Plaintiff could perform the jobs of office helper, information clerk, and clerical worker (R. at 25.) Therefore, the ALJ found Plaintiff not disabled from January 27, 2019 (the alleged onset date) through April 5, 2023 (the date of the decision). (R. at 26.)

## IV.    ANALYSIS

Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ: (1) erred in evaluating Plaintiff's subjective complaints; (2) improperly rejected

10

Dr. Zenger's opinion; and (3) failed to consider Plaintiff's non-exertional limitations. (Pl.'s Br. at 7-17.) The Court addresses each argument below and finds no reversible error.

A. **The ALJ Applied Correct Legal Standards in Evaluating Plaintiff's Subjective Complaints, and Substantial Evidence Supports the ALJ's RFC Determination**

Plaintiff first argues that the ALJ failed to adequately explain why he found Plaintiff's subjective complaints inconsistent with the record. (Pl.'s Br. at 9-15.) Specifically, Plaintiff contends that the ALJ erred in concluding the record supports mild lumbar changes and normal examination findings and in evaluating Plaintiff's conservative treatment and activities of daily living. (Pl.'s Br. at 9-15.) The record shows otherwise. The ALJ evaluated Plaintiff's subjective complaints as required by applicable regulations and provided a clear path to his reasoning regarding Plaintiff's impairments and limitations. In addition, substantial evidence supports the ALJ's RFC determination.

*1.   Standard for Evaluating Subjective Complaints*

The regulations provide a two-step process for evaluating Plaintiff's subjective complaints. 20 C.F.R. § 404.1529; *see also* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine "whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (citing 20 C.F.R. § 404.1529(b); SSR 16-3p). Second, "after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.* The ALJ must consider all available evidence in this determination, including objective medical evidence, an individual's statements about the intensity, persistence, and limiting effects of the symptoms, and medical

11

opinions and statements from others.  *Id.*  The claimant does not need to produce objective evidence to satisfy this second prong.  *Id.*

### 2.  The ALJ Properly Evaluated Plaintiff's Subjective Complaints

Here, the ALJ followed the two-step process in considering Plaintiff's subjective complaints.  At the first step, the ALJ found that Plaintiff's medically determinable impairments could lead to the alleged symptoms.  (R. at 22.)  And at the second step, and "[a]fter careful consideration of the evidence," the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (R. at 22.)

The ALJ acknowledged Plaintiff's impairments and provided a summary of the medical record, treatment plan, and Plaintiff's daily activities.  (R. at 22-24.)  Following the ALJ's evaluation of Plaintiff's symptoms and analysis of the records, the ALJ determined that the "findings of the [Plaintiff]'s treating and examining sources do not support the severity of restrictions that [Plaintiff] has alleged."  (R. at 23.)  The ALJ supported this conclusion by identifying inconsistencies between Plaintiff's subjective complaints and Plaintiff's medical record, conservative treatment plan, and activities.  (R. at 22-24.)  This constitutes substantial evidence supporting the ALJ's RFC assessment.

### a.  The ALJ Properly Considered Plaintiff's Medical Records in Finding Her Subjective Complaints Overstated

The ALJ properly considered the objective medical evidence in considering Plaintiff's subjective complaints, including impressions from imaging and examination findings.  Imaging of Plaintiff's lumbar spine in February 2017 revealed mild degenerative disease slightly more prominent at L3-4, L4-5, and L5-S1.  (R. at 22, 241.)  September 2017 records noted that

"[s]trength, sensation, and deep tendon reflexes in all extremities were . . . within normal limits." (R. at 22, 233.)  A few years later, in October 2019, imaging of Plaintiff's lumbar spine revealed mild to minimal facet arthropathy at L1-L5 and mild to moderate arthropathy and hypertrophy bilaterally at L5-S1.  (R. at 22-23, 254.)  In July 2020, Plaintiff reported decreased pain and "overall increased function" two years post-procedure, and examination notes indicated no musculoskeletal or neurological symptoms.  (R. at 22, 247.)  During her June 2021 consultative evaluation, Plaintiff exhibited a "steady and symmetric gait, no assistive device, orientation x4, no muscle spasms, normal sensation to light touch throughout and 5/5 strength bilaterally in the upper and lower extremities."  (R. at 23; *see also* R. at 258-63.)  She also had no signs of joint swelling, effusion, erythema, or deformity and displayed a normal range of motion bilaterally.  (R. at 23, 260-62.)  About a year later, in May 2022, an MRI revealed mild degenerative changes with epidural lipomatosis, and minimal to mild canal stenosis at L3-L4 and L4-L5.  (R. at 23, 311.)  The ALJ described these studies as "continu[ing] to note grossly mild changes."  (R. at 23.)

As for Plaintiff's other impairments, Plaintiff reported numbness and tingling in her hands in 2021.  (R. at 23, 276.)  An EMG confirmed mild bilateral carpal tunnel syndrome without evidence of denervation, and Plaintiff exhibited normal ranges of motion and full strength in her wrists and hands on examination.  (R. at 23, 277, 282.)  Imaging from 2022 showed moderate tricompartmental degenerative changes with no acute processes of Plaintiff's knees and pelvis and minor degenerative changes of Plaintiff's left shoulder.  (R. at 23, 294, 302.)  These records provide substantial support for the ALJ's finding that "the longitudinal history of clinical studies notes only mild to moderate irregularities with her knees, lumbar spine, left shoulder, and with her carpal tunnel syndrome."  (R. at 23.)

In challenging the RFC finding, Plaintiff argues that the ALJ mischaracterized the medical record in several respects.  First, Plaintiff contends that the ALJ erred in finding that "lumbar spine studies continued to note grossly mild changes."  (Pl.'s Br. at 10.)  In making this finding, the ALJ cited a May 2022 MRI of Plaintiff's lumbar spine, which showed "*[m]ild* degenerative changes with epidural lipomatosis*", "*[m]inimal/mild* canal stenosis at L3-4 is increased new", and "*mild* canal and left foraminal stenosis at L4-5 with effacement of nerve is extending to the left L5-S1 foramen."  (R. at 311 (emphases added); *see* R. at 23.)  Thus, the MRI results support the ALJ's finding of "grossly mild changes."  (R. at 23.)  In addition, the record contains substantial evidence supporting the finding that Plaintiff's condition remained relatively stable over the period at issue. For example, MRI results from October 2019, about three years earlier, indicated nearly identical results other than the minimal/mild canal stenosis at L3-4.  (*Compare* R. at 254 *with* R. at 311.) This provides further support for the ALJ's conclusion that a "longitudinal history of clinical studies notes only mild to moderate irregularities with her . . . lumbar spine . . . ."  (R. at 23.)

Next, Plaintiff faults the ALJ for not expressly discussing October 2022 x-ray results which showed "advanced lower lumbar degenerative change" with "[n]o acute process."  (R. at 295; *see* Pl.'s Br. at 11.)  The ALJ, however, considered those treatment records as a whole in his decision, including October 2022 treatment records where Plaintiff denied back pain, extremity pain, or neck pain.  (R. at 23 (citing R. at 340).)  Moreover, it is not feasible for an ALJ to discuss every notation in the record.  *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (per curiam) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision . . . .") (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).  Indeed, "an ALJ's failure to cite specific evidence does not indicate that it was not considered."  *Massey v. Astrue*, No. 3:10-cv-02943, 2012 WL 909617, at *2 (D.S.C. Mar. 16, 2012) (quoting *Craig v.*

*Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)); *see also Blaine v. Astrue*, No. 4:09-cv-104, 2010 WL 3291824, at *3 n.7 (E.D. Va. June 3, 2010), *report and recommendation adopted*, 2010 WL 3291825 (E.D. Va. Aug. 18, 2010) (noting that "the ALJ's failure to specifically cite to [referenced] evidence does not imply that he did not consider all of the available evidence in making his decision"). In any event, considered alongside the other imaging results from 2017 through 2022 and the record discussed above, the October 2022 x-ray results do not undermine the substantial evidence supporting the ALJ's RFC determination.

Plaintiff also argues that the ALJ erred in finding "that purportedly largely normal findings of [Plaintiff's] treating and examining sources were not supportive of the severity of restrictions that she had alleged." (Pl.'s Br. at 12.) The ALJ, however, did not characterize the record as containing largely normal findings. To the contrary, in arriving at the modified light work RFC, the ALJ acknowledged both irregular and normal findings throughout the period at issue but ultimately found that the "findings of [Plaintiff's] treating and examining sources do not support the severity of restrictions that [she] has alleged." (R. at 23.) For support, the ALJ referenced, among other things, "the longitudinal history of clinical studies" of Plaintiff's knees, lumbar spine, left shoulder, and hands/wrists showing "mild to moderate irregularities"; the lack of "clinical evidence of acute irregularities or complications"; and examinations showing normal gait, normal sensation, and full strength in all extremities. (R. at 23.) Thus, the Court finds no reversible error in the ALJ's summary of the record. The ALJ properly considered the evidence that he found to be noteworthy, explained his findings, and supported his conclusions with substantial evidence.

b. The ALJ Properly Considered Plaintiff's Conservative Treatment in Discounting Her Subjective Complaints

The ALJ cited Plaintiff's "entirely conservative, routine, and outpatient" treatment as further support for his conclusion that Plaintiff's symptoms were not as severe or as limiting as

she alleged.  (R. at 23.)  Plaintiff's treatment included nerve blocks, a back brace, physical therapy, outpatient rehabilitation, and pain management.  (R. at 22-23, 239, 248, 279, 282, 305, 312.)  Plaintiff's impairments did not cause complications requiring hospitalization or further evaluation by a specialist.  Substantial evidence supports the ALJ's characterization of Plaintiff's treatment as conservative, routine, and outpatient.  (R. at 23.)

Plaintiff argues that "the purportedly conservative nature of her treatment does not indicate its effectiveness in relieving her pain."  (Pl.'s Br. at 13.)  The ALJ acknowledged Plaintiff's reports of pain, but also acknowledged Plaintiff's various statements throughout the period at issue indicating that her symptoms improved or were managed on an outpatient or primary care basis.  During multiple appointments, Plaintiff indicated that her symptoms improved with medication.  (R. at 247, 258.)  For example, in June 2021, Plaintiff reported to Dr. Zenger that her osteoarthritis, hypertension, and lumbago symptoms improved with medication.  (R. at 23, 258.)  Plaintiff's treatment also included nerve block injections (R. at 22), which she reported improved her symptoms and decreased her use of pain medications.  (R. at 247 (reporting "greater than 50% relief of pain, decreased use of pain medications, overall increased function and activity tolerance"), 250, 255.)  It was reasonable for the ALJ to consider Plaintiff's treatment plan and Plaintiff's reports of its effectiveness in weighing her subjective complaints.  *See Dunn*, 607 F. App'x at 274.  Moreover, the ALJ made clear that the RFC determination "account[s] for [Plaintiff's] persistent pain."  (R. at 24.)  Because the record supports that Plaintiff underwent generally conservative treatment with improvement or stabilization, the ALJ properly relied on that treatment as one factor undermining Plaintiff's subjective complaints.

c.  The ALJ Properly Considered the Extent to Which Plaintiff Performed Her Activities of Daily Living

The ALJ also considered inconsistencies between Plaintiff's subjective complaints and her daily activities.  The ALJ noted that Plaintiff could live independently, care for some personal hygiene needs, prepare simple or frozen meals, complete light household cleaning (such as vacuuming and sweeping), wash laundry, drive, and shop for groceries and personal needs, among other activities.  (R. at 22, 52-55.)  The ALJ properly considered Plaintiff's activities along with other evidence in determining that Plaintiff could perform modified light work.

Plaintiff argues that the ALJ erred by failing to discuss the extent to which Plaintiff could perform her activities of daily living.  (Pl.'s Br. at 14-15.)  Indeed, in assessing a claimant's daily activities, the ALJ must consider both the types of activities that a claimant can perform and the extent to which a claimant can perform them.  *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).  The ALJ complied with this requirement.  (R. at 22-24.)  For example, the ALJ acknowledged that Plaintiff could "care for *some* personal hygiene needs" and "prepare *simple or frozen* meals."  (R. at 22-23 (emphasis added).)  The ALJ also stated Plaintiff could "complete *light* household cleaning" and acknowledged that Plaintiff "*limits* her household chores to *what she feels that she is able to accomplish*" on a given day.  (R. at 22-23 (emphasis added).)  The ALJ did not simply consider the types of activities that Plaintiff could perform, but also the extent to which she could perform them.  (R. at 22-24); *see Dangelette D. v. Saul*, No. 3:19-cv-358, 2020 WL 5046293, at *4 (E.D. Va. Aug. 26, 2020).  Thus, the Court finds no error in the ALJ's consideration of Plaintiff's daily activities.

**B. The ALJ Applied Correct Legal Standards in Evaluating Dr. Zenger's Medical Opinion, and Substantial Evidence Supports the ALJ's Findings**

Plaintiff next argues that the ALJ failed to apply correct legal standards in considering Dr. Zenger's opinion.  Specifically, she contends that the ALJ failed to adequately explain why the

more restrictive limitations found by Dr. Zenger were not supported by the record. (Pl.'s Br. at 15-16.) The Commissioner responds that the ALJ's analysis was proper because (1) he nevertheless adopted Dr. Zenger's opinion that Plaintiff should not sit, stand, or walk for more than 30 minutes at a time; and (2) Dr. Zenger failed to provide support for his lifting and carrying limitation, which was otherwise inconsistent with the record evidence. (Def.'s Mem. at 24-26.) Review of the decision and record shows that the ALJ analyzed the medical opinion evidence consistent with applicable legal standards and that substantial evidence supports the ALJ's findings regarding the weight assigned to Dr. Zenger's opinion.

### 1.  Applicable Regulations for Evaluating Medical Opinion Evidence

Under applicable regulations,[5] the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources without deferring or giving any specific evidentiary weight to any medical source.  20 C.F.R. § 404.1520c(a).  Specifically, the ALJ must articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id.* § 404.1520c.

Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written decision. *Id.* § 404.1520c(b)(2).  The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her

---

[5] Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework. 20 C.F.R. § 404.1520c. (*See also* Pl.'s Br. at 12-13; Def.'s Mem. at 22.)

medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id*. § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered. *Id*. § 404.1520c(b)(2).

### 2. Dr. Zenger's Medical Opinion

Dr. Zenger provided a consultative examination on June 26, 2021.  (R. at 258-64.)  In his report, Dr. Zenger noted Plaintiff "alleges disability due to osteoarthritis, hypertension and lumbago" and briefly summarized her medical history.  (R. at 258.)  Dr. Zenger noted that Plaintiff's hypertension is managed with medication and her osteoarthritis and lumbago are treated through epidural injections, physical therapy, and medication.  (R. at 258.)  At the time of the examination, Plaintiff rated her pain a 6/10.  (R. at 258.)  He further reported Plaintiff had a steady and symmetric gait; no assistive device; no palpable muscle spasms; full (5/5) bilateral muscle strength; no joint swelling or effusion, erythema, or deformity; and tenderness to palpation in the bilateral lower back.  (R. at 261-62.)  A sensory examination was normal to light touch, and a straight leg test was negative bilaterally.  (R. at 261.)  Plaintiff had moderate difficulty walking on heels and toes, had an abnormal and unbalanced tandem walk, and could not hop on one foot bilaterally, but could squat and rise with ease and without assistance and was "fairly functional and moving about easily in the exam room and the hallways."  (R. at 262.)

Based on these findings, Dr. Zenger indicated that Plaintiff experienced "[l]ow back pain status post multiple epidural steroid injections and therapy."  (R. at 263.)  He opined that Plaintiff could sit for six hours and stand and walk for four hours in an eight-hour workday but only for 30

minutes at a time.  (R. at 263.)  Dr. Zenger found Plaintiff could lift and carry 10 pounds frequently due to back pain and had no limitations on bending, stooping, crouching, squatting, reaching, grasping, handling, fingering, and feeling.  (R. at 263.)  He also indicated that Plaintiff had no visual, communicative, or workplace environmental limitations.  (R. at 263.)

>    3.  *The ALJ Did Not Err in His Analysis of Dr. Zenger's Opinion*

After summarizing Dr. Zenger's opinion, the ALJ found it "somewhat supported" and consistent with the record.  (R. at 23.)  Specifically, he found the six hours of sitting and four hours of standing and walking in an eight-hour workday limitation "well supported by the clinical findings of the consultative examination and consistent with the remaining conservative treatment history as defined by the remaining record."  (R. at 23.)  The ALJ also found the environmental and postural limitations opined by Dr. Zenger supported and consistent with the record.  (R. at 23.)  On the other hand, the ALJ found no support in the consultative examination findings for the 30-minute time restriction on sitting, standing, or walking.  (R. at 23.)  The ALJ also found the record evidence consistent with light work with additional restrictions rather than sedentary work.  (R. at 24.)  He emphasized Dr. Zenger's findings that Plaintiff had a "steady and symmetric gait, no assistive device, orientation x4, no muscle spasms, normal sensation to light touch throughout, and 5/5 strength bilaterally in the upper and lower extremities."  (R. at 23.)  The ALJ also explained that greater restrictions "are not supported by the conservative and grossly outpatient treatment history during the period at issue, the clinical and examination findings of no acute complications, and [Plaintiff's] stated ongoing capabilities."  (R. at 24.)  Thus, the ALJ applied correct legal standards in evaluating Dr. Zenger's opinion, and the ALJ's determinations pertaining to this opinion are supported by substantial evidence.

Plaintiff contends that the ALJ failed to explain why Dr. Zenger's evaluation did not support the recommended 30-minute restriction. (Pl.'s Br. at 15 (citing R. at 23).) The ALJ's summary of Dr. Zenger's findings and the consultative evaluation refute this argument. The consultative evaluation does not include an explanation for the 30-minute restriction. (R. at 23.) Specifically, Dr. Zenger found Plaintiff was negative for Romberg sign and had a negative bilateral straight leg test in the sitting and supine positions. (R. at 261.) Although Plaintiff presented with "moderate difficulty walking on her heels and toes" and abnormal tandem walking, Plaintiff was able to squat and rise with ease, rise from a seated position without assistance, and get up and down from the exam table with ease. (R. at 23, 262.) The ALJ did not err in finding no support for the 30-minute restriction in Dr. Zenger's evaluation, as Dr. Zenger noted that Plaintiff was fairly functional and moved around the exam room easily. (R. at 262.) Regardless, any error would be harmless because the ALJ ultimately found such limitation consistent with the record evidence and adopted a limitation that allows Plaintiff's to alternate between sitting and standing at 30-minute intervals. (R. at 24); *see Angel L. H. v. Comm'r of Soc. Sec.*, No. 4:20-cv-120, 2021 WL 6750796, at *8 (E.D. Va. Dec. 21, 2021), *report and recommendation adopted*, 2022 WL 256502 (E.D. Va. Jan. 26, 2022) (finding any error by the ALJ in evaluating a medical opinion to be harmless where the ALJ nevertheless incorporated those limitations into the plaintiff's RFC).

Plaintiff also challenges the ALJ's failure to address Dr. Zenger's finding that "[she] was limited to 10 pounds of lifting/carrying." (Pl.'s Br. at 15.) This argument too lacks merit. As an initial matter, Plaintiff overstates the lifting and carrying limitation opined by Dr. Zenger. Dr. Zenger did not limit Plaintiff's lifting and carrying to *no more than* 10 pounds. Instead, Dr. Zenger found that Plaintiff "can be expected to lift and carry 10 pounds *frequently* due to back pain." (R. at 263 (emphasis added).) The ALJ limited Plaintiff to light work due to her persistent pain. (R.

at 24.)  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  In other words, the ALJ adopted the frequent lifting and carrying limitations opined by Dr. Zenger.  (R. at 24, 263.)

The ALJ further concluded that Plaintiff retains the capacity to "lift and/or carry no more than 20 pounds of weight *occasionally*" and provided an adequate explanation to support that conclusion.  (R. at 24 (emphasis added).)  Specifically, the ALJ relied upon evidence, including findings within Dr. Zenger's consultative examination, which showed that Plaintiff had full strength in her upper and lower extremities and a universally normal range of motion bilaterally.  (R. at 23, 261-62, 282.)  Indeed, Dr. Zenger's own assessment indicates that Plaintiff "was able to lift, carry and handle light objects."  (R. at 262.)  These assessments support the ALJ's finding that Plaintiff is capable of the lifting and carrying requirements associated with light work.  In addition, the ALJ was partially persuaded by the medical opinions of the two state agency examiners who found Plaintiff capable of light work and further opined that additional lifting and carrying limitations would not be "consistent with motor strength and [range of motion] documented in medicals."  (R. at 24, 73, 80.)  The ALJ further pointed to the mild to moderate clinical findings, conservative treatment, lack of acute complications present on physical examination, and Plaintiff's stated ongoing capabilities as further supporting the modified light work RFC.

Ultimately, the ALJ properly explained why he found Dr. Zenger's opinion partially persuasive by addressing the supportability and consistency factors.  To the extent the ALJ adopted different limitations in the RFC, he explained the evidence and reasoning behind his conclusions, thereby building "an accurate and logical bridge from the evidence to his conclusion[s]."  *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).  Therefore, the Court finds no error.

**C.** **The ALJ Properly Evaluated the Evidence Related to Plaintiff's Non-Exertional Limitations**

Plaintiff next argues that the ALJ erred in evaluating her non-exertional limitations.  (Pl.'s Br. at 16.)  Specifically, Plaintiff contends the ALJ failed to consider how her chronic pain impacts her ability to stay on task in a work environment.  (Pl.'s Br. at 17.)  Review of the record shows that the ALJ properly considered the evidence pertaining to Plaintiff's alleged non-exertional limitations and that substantial evidence supports the RFC findings.

The ALJ considered Plaintiff's testimony that "the pain continues to affect her focus during the day and causes her to get off track."  (R. at 22.)  But he also considered other substantial record evidence showing little to no impact on Plaintiff's ability to focus or concentrate.  For example, in a function report dated June 2021, Plaintiff stated she had "no problem paying attention" or "following spoken instructions," and "follow[ed] written instructions very well."  (R. at 186.)  That same month, Dr. Zenger noted Plaintiff presented with "clear thought processes" and her "memory was normal and concentration was good."  (R. at 261.)  This evidence provides no support for limitations relating to focus, attention, or concentration.

Moreover, an ALJ need not discuss every piece of evidence in making an RFC determination.  *See Reid*, 769 F.3d at 865.  And the ALJ need only include credibly established limitations in the RFC.  *Rebecca J. v. Kijakazi*, No. 3:20-cv-00795, 2022 WL 815467, at *8 (E.D. Va. Feb. 10, 2022), *report and recommendation adopted*, 2022 WL 811292 (E.D. Va. Mar. 16, 2022).  The ALJ's decision, when viewed as a whole, provides a sufficient narrative explanation of the ALJ's RFC determination, and substantial evidence supports the ALJ's decision not to include any non-exertional limitations in the RFC.[6]

---

[6] In her final argument, Plaintiff challenges the ALJ's findings at step five.  (Pl.'s Br. at 17-18.) This argument goes to whether or not the alleged errors in the RFC finding would be harmless.

## V.    CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 16) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to the Honorable United States District Judge Rodrick C. Young and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____ /s/ [signature]

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: February 5, 2025

---

Specifically, Plaintiff contends that a proper RFC would have been sedentary, and that a sedentary RFC would have resulted in a finding of disabled because the vocational expert testified that she had no transferrable work consistent with the other RFC limitations.  (Pl.'s Br. at 17-18.)  As discussed above, the Court finds no error in the ALJ's RFC determination of modified light work. Therefore, this argument fails.